OPINION OF THE COURT
John Manning Regan, J.
i. findings of fact
On Tuesday, April 26,1983, the trial of Dedra Thousand was in progress. An above-normal group of spectators had filled the courtroom. This was not surprising, since Ms. Thousand was defending herself against charges of third degree obscenity. The prosecution had charged that her dancing as a dial-a-doll constituted an “obscene performance”.
She had danced in front of an undercover vice-squad officer, Eric Larsen, and he was testifying about her dance in detail that Tuesday afternoon; in a detail so lurid and ample that his testimony had attracted the curious and the inquisitive, as well as the prurient. During the afternoon session, however, the defense counsel interrupted the proceedings to complain that Officer Lacancellera, seated at the prosecutor’s table, was covertly recording the trial by means of an electronic taping device located inside a large manila envelope, and was using a recording microphone concealed underneath his shirt. This caused a defense motion for a mistrial.
After the motion had been made, the court ascertained that the accusations of defense counsel were accurate. *948 Moreover, Officer Lacancellera did not deny them. Although he had acknowledged, when the trial began, that he had participated with Officer Larsen in the investigation of dial-a-doll dancing, he had resisted the court’s original sequestration order, on the grounds that he did not intend to testify. Satisfied, both counsel and the court had acquiesced in his presence at the prosecutor’s table during the trial. From that vantage position, he had commenced recording.
The court next inquired of the witness whether he objected to the taping. The witness responded that he did not object. The court then asked Officer Lacancellera whether he wished to continue taping. Officer Lacancellera answered yes. Defense counsel and Ms. Thousand, however, repeatedly objected and renewed the motion for a mistrial.
The court denied the motion for a mistrial, and both continued the trial and authorized the taping, but found Officer Lacancellera in summary contempt of court and imposed, forthwith, a fine of $50. The court, thereupon, ordered a hearing on Friday, April 29, 1983, to consider facts, if any, in mitigation and extenuation of the contempt.
On Friday, April 29, 1983, the respondent, Officer Lacancellera appeared with counsel and offered the following proof in mitigation:
(1) He denied knowledge of any rule or regulation prohibiting the taping of a trial; and
(2) He pleaded that his actions had been authorized and ordered by his superior officer.
In furtherance of his defense of “following orders”, Officer Lacancellera presented the sworn testimony of Detective Supervisor Jack Gerbino of the Rochester Police Department. Detective Gerbino testified, in part, as follows, on April 29:
Q. With regard to Officer Lacancellera, what position do you hold above him?
A. I am Lacancellera’s supervisor.
Q. I am going to turn your attention back to Tuesday, the 26th, this past Tuesday, with regard to an incident wherein Mr. Lacancellera was taping certain testimony in this courtroom. Were you aware of that?
*949 A. Yes, I was.
Q. How did that come about to have been done?
A. Officer Lacancellera and Larsen informed me there was a trial set on the Deidra Thousand for obscenity third. I instructed them to have the testimony of Eric Larsen taped.
Q. What was the purpose in which you instructed the officer to tape this particular testimony?
A. There were two reasons for my instructing them to tape it.
Number one, was the fact that I’d like to use the testimony of Eric Larsen as a training device for in-house training and secondly, it was a budgetary problem where in the past I’ve had to order transcripts and the expenses was too much for our budget.
Q. Now, with regard to this, was the one reason, the reason why you picked this particular type of trial?
A. Yes, we are.
Q. Anything about the charge?
A. Yes. We are having much, much difficulty in being successful in obtaining convictions for obscenity trials, plus there was so much confusion in that particular area by not only the judiciary, but also by defense attorneys and prosecutors.
Q. So, then would it be fair to say that the reason this was done was simply two-fold. One is the training for those individuals under you and secondly because frankly you couldn’t afford to get the transcript?
A. That is correct.
II. CONCLUSION OF LAW
22 NYCRR 29.1 (a) provided on April 26, 1983, the following: “(a) The taking of photographs in or of a courtroom, the broadcasting from a courtroom and the telecasting in or of a courtroom any time or on any occasion, whether or not the court is in session, is forbidden, unless permission of the Chief Judge of the Court of Appeals is first obtained. Such permission may be granted under this subdivision in respect to any courtroom or courtrooms, or may be granted as provided under section 29.2 of this Part. However, these provisions shall not apply to applications made to the appropriate court for photographing, taping, or videotaping by or on behalf of the parties to the litigation for the sole purpose of the litigation and not for public dissemination.”
*950 Additionally, there are two statutes which bear on these events, both of which were in force on April 26, 1983. The first is section 52 of the Civil Rights Law. It states, in pertinent part: “No person * * * shall * * * arrange for the * * * broadcasting * * * of proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken * * * by a court”.
The second statute is CPL 160.50 (subd 1, par [c]) which directs that a court may enter an order sealing “(c) all official records and papers * * * relating to the arrest, or prosecution ” of any defendant where the criminal action is eventually and finally terminated in favor of the accused person.
A violation of section 52 of the Civil Rights Law is a misdemeanor. There is no penalty prescribed for a violation of 22 NYCRR 29.1(a).
CPL 160.50 (subd 1, par [c]), however, presumes that a presiding Trial Judge should know, and indeed, must know, what are all the records of the prosecution. A secret taping deprives the Judge of information he is legally required to possess.
In view of these regulations and statutes, the behavior of the respondent, Officer Lacancellera, on April 26, 1983, was, in fact, a direct violation of law, and contemptuous of the authority of this court. Moreover, it constituted behavior directly tending to disrupt the proceedings, as in fact occurred when the defendant moved for a mistrial. Accordingly, respondent is guilty of contempt in violation of section 750 (subd A, par 1) of the Judiciary Law.
Respondent’s proof in mitigation is unpersuasive. If, in fact, he believed he had the legal right to tape the proceedings because his superior officer had commanded him to do so, he never would have concealed the tape recorder and the microphone. That he did conceal them belies the contentions he has made to the contrary. Further, as to his plea of ignorance, the maxim of the law is: ignoratio legis non excusat, that is, ignorance of the law is no excuse. Particularly in the case of police officers, who are sworn to uphold and enforce the law, ignorance is a weak and slender reed on which to found a defense, and even a case in mitigation, as to this offense.
*951 Neither the police, nor any other body, have the authority to control what happens in a courtroom during judicial proceedings. During those proceedings, the presiding Judge, and the Judge alone, is empowered to authorize or forbid behavior. And where the law forbids certain types of behavior, only the presiding Trial Judge may excuse noncompliance.
Accordingly, Officer Lacancellera is guilty of summary contempt of court for taping the trial without the permission and prior authorization of the Trial Judge.
III. SENTENCE AND PUNISHMENT
The fine of $50, originally imposed, is made absolute. Furthermore, a copy of this decision and final order shall be filed in the personnel record of the respondent for a period of three years. Upon expiration of three years, the respondent may apply to any Judge of this court to expunge the document from his record.
Upon application of counsel for the respondent, all terms and conditions of this order are stayed for a period of 45 days from the date hereof to afford an opportunity for review in accordance with the provisions of section 755 of the Judiciary Law. If no review is sought within such period, the fine is payable within 10 days thereafter, and this order shall be transmitted forthwith to the chief of police.